DENVER PRODUCE & COMMISSION CO. *v.* R. C. TAYLOR & CO.

CONTRACTS. *Commission merchants. Consignment by one to another. Breach of contract. Right of action in owner.*

Where a commission merchant in this state collects vegetables from numerous growers, and ships the same, by carload lots, to a foreign commission merchant, for sale upon a contract for a division of commissions, and with the understanding that the proceeds, less commissions, shall be remitted direct to the producers, whose names and the number of crates owned by each appear in the manifest forwarded, and also by the markings on the crates, such shipper cannot maintain an action in his own name against the consignee, for damages resulting from delay in putting the vegetables in a particular car on the market, although the consignment was made in his own name, for, as between them, the enterprise was a joint one, and the contract was not made in the name of the shipper, either as principal or the representative of an undisclosed principal.

FROM the circuit court of Copiah county.

HON. J. B. CHRISMAN, Judge.

The firm of R. C. Taylor & Co. sued out a writ of attachment, in the circuit court of Copiah county, against the Denver Produce & Commission Co., a corporation under the laws of Colorado, and the Bank of Crystal Springs was summoned as garnishee. The bank answered, admitting an indebtedness to the defendant of $333.85. On the trial, plaintiffs recovered a verdict and judgment for $306.85, from which defendant appealed. The opinion of the court contains a further statement of the case.

*J. S. Sexton,* for appellant.

Plaintiffs are not entitled to recover unless they sustained damage. Whatever may be the facts in reference to the sale of these tomatoes, plaintiffs cannot recover. Defendant was

doing a commission business, pure and simple. Taylor & Co. and the growers knew this. Defendant knew that Taylor & Co. were shipping vegetables for others and not for themselves. Whatever commission they received was to be paid by defendant, not by the growers. Taylor & Co. had no interest in the tomatoes except to receive their *pro rata* of commissions, and that has been paid them. The duty of Taylor & Co., in this enterprise, was to solicit and select fruit and vegetables from the growers and load them on the cars. The duty of defendant was to receive, care for and sell. The commissions thus earned, by the joint effort of each, were to be divided. To this extent they were doing a joint commission business, and were partners in the commissions earned. What were the powers and duties of plaintiffs as agents of the growers ? If they had any power or duty, it was the power and duty in connection with defendant, as above indicated, to sell and dispose of the property intrusted to them for shipment. If that be true, the default of defendant is the default of plaintiffs, and they are not entitled to complain of their own wrong. Under certain circumstances commission merchants can institute suits against third persons in their own names, but plaintiffs were not commission merchants; they were solicitors for defendant. If Taylor & Co. are to be treated as agents of the growers, still, "ordinarily, an agent contracting in the name of his principal and not in his own name, is not entitled to sue, nor can he be sued, on such contracts." 1 Am. & Eng. Enc. L., p. 408, and authorities cited. "Where it is not clear, from the face of the writing, who the party is contracted with, the courts will gather from the whole instrument" the intention of the parties. *Ib.*, 409. In view of the authority last quoted and the facts in this case, it signifies nothing that defendant returned the account of the disposition of the tomatoes to Taylor & Co. A receipt in full by Taylor & Co. would be no protection against anybody except themselves, because the whole testimony makes it clear that they had no right to collect for the growers. Tay-

lor & Co. requested defendant to deposit money in the Bank of Crystal Springs, with the view of sending accounts of sales and checks direct to the growers.

*Willing & Ramsey,* for appellees.

An agent may maintain an action in his own name, on a contract made by him: 1. Where the contract is made in writing expressly with the agent, and imports to be a contract personally with him, although he may be known to act as agent. 2. Where the agent is the only known or ostensible principal, and is the real contracting party in contemplation of law. 3. Where, by the usage of trade or the general course of business, the agent is authorized to act as the owner or principal contracting party, although his character as agent is known. 4. Where the agent has made a contract in the subject-matter of which he has a special interest or property, whether he professed, at the time, to be acting for himself or not. Story on Agency, § 393.

When this contract was made between plaintiffs and defendants, plaintiffs were the only known or ostensible principals, and were, therefore, in contemplation of law, the real contracting parties. The tomatoes were shipped to the Denver Produce & Commission Co., at its request. The car did not reach Denver until July 7, with the manifest, showing the names of the growers. The undertaking of defendants was with Taylor & Co., and the contract was made when Taylor & Co., in response to a telegram, delivered the car to the railroad company for transportation, and notified defendants that the shipment was made, and this was several days before defendants knew who the owners were. This contract was made in writing, expressly with Taylor & Co., and imports to be a contract personally with them. Taylor & Co., in that view of the case, could maintain this action, even if it was known that they were acting as agents. The report of the sale shows that defendant recognized Taylor & Co. as the party with which it was deal-

ing.    The suit could be maintained by Taylor & Co., because, by the usage of trade or general course of business, they were authorized to act as owners and principal contracting parties, and did so act, as shown by the testimony.    The interest Taylor & Co. had in the tomatoes entitled them to sue.    They acted as agents for the growers, and had a lien on the tomatoes for amounts advanced by them for loading the car, as shown by the evidence, and for the commissions defendant had agreed to allow them, this being a mere rebate to them by the defendant.

Argued orally by *J. S. Sexton*, for the appellants.

COOPER, C. J., delivered the opinion of the court.

The defendant is an incorporated company, engaged in the business of a commission merchant of fruits, vegetables, and produce, in the city of Denver, Colorado.    The plaintiffs were engaged in a sort of fruit and vegetable commission business at Crystal Springs.    The course of their business was about this: They would solicit from individual growers and shippers of fruit, consignments of their products, to be shipped to the various markets in the country, through the plaintiff's firm, and sold by their correspondents in the different cities.    The plaintiffs would thus collect the fruits and vegetables of numerous persons, and, combining them, make up carload lots, and consign the same to some one of their correspondents.    The compensation of the plaintiffs was in the shape of commissions on the gross amount of sales, the commissions being divided in agreed proportions between the plaintiffs and the commission merchants to whom the articles were shipped to be sold.    The contract between the plaintiffs and the defendant was that a commission of ten per cent. should be charged on all sales made by the defendant, of which it should retain seven per cent., and pay over to the plaintiffs three per cent.

As the products dealt with were of a perishable nature, the railroads engaged in their carriage required that freights

should be prepaid, or their payment upon delivery to the consignee guaranteed by responsible parties. The custom was for consignees to supply this guarantee, and this was done by the defendant in reference to the consignment in controversy. To give confidence to the community of fruit and vegetable growers, it was also customary for commission houses in distant cities to make deposits in the local banks, against which drafts were drawn, payable either to the local house making the consignment, or to the individuals whose property had been sold. To facilitate these settlements, it was understood between the plaintiffs and defendant that the defendant, upon sales being made, should report to the owners, and remit directly to them.

On July 2, the defendant company sent to the plaintiffs the following dispatch:

"DENVER, July 2, 1895.

"*Messrs. R. C. Taylor & Co., Crystal Springs, Miss.:*

"Think can make you satisfactory returns on car medium-ripe tomatoes, shipped at once. Answer.

"THE DENVER PROD. & COM. CO."

On July 3, Taylor & Co. consigned, in their own name, a car containing eight hundred and twelve crates of tomatoes to the defendant company. In the manifest sent to the defendant the plaintiffs gave a list containing the names of the various persons interested in the consignment, the number of crates owned by each and the stencil number of the respective owners as marked on the crates.

The car reached Denver on the seventh of July, but was not opened and the tomatoes put on the market until the eleventh. The freight of the shipment had been guaranteed by the defendant, and was paid by it. On sale of the contents of the car, the proceeds were less than the freight, commissions and cost of loading, and so no report was made by the defendant to the owners. The defendant repaid itself from such proceeds the amount paid out for freight, and remitted to Taylor & Co.

the cost of loading the car, which they had paid, and also three per cent. of the gross amount of sales as commissions. This left in the hands of the defendant a sum less than its seven per cent. of sales, the commissions to which, under its contract with Taylor & Co., it was entitled to retain.

Taylor & Co., claiming that loss had resulted from the delay of the defendant in putting the tomatoes on the market, brought this action to recover the same, and the defendant's first contention is that the plaintiffs had no such interest in the consignment as to entitle them to sue, even if it was negligent in making the sales; that the shipment was made by the plaintiffs as its solicitor and as the agent of known principals, who are alone entitled to maintain actions for any breach of contract.

The general rule, undoubtedly, is that an agent may not maintain an action for the breach of a contract made by him for his principal. This, counsel for the plaintiffs do not deny, but seek to bring their case within certain exceptions. They contend that, since the car was consigned in their name to the defendant, the contract was in fact made with them as principals, or with them acting as agents for unknown principals. This contention is plausible only so long as we look at the single isolated fact that the plaintiffs were named in the shipment as consignors, and exclude from view the nature of the engagement existing between the parties, and all other facts accompanying and explaining the consignment.

The plaintiffs and the defendants were, according to the terms of their general contract, engaged in a joint enterprise, which, as we gather from the record, was not exceptional in character in the community in which the plaintiffs lived, and not unknown to their patrons. Mr. Taylor says his firm was "representing the Denver company, and was representing, in this shipment, the growers and the company too. In addition to the commissions allowed by the company, they (the growers) paid us so much a crate for loading—probably a cent and a half a crate—and we were shipping to other houses throughout the country

on the same terms. In order to induce shipments, the parties to whom consignments were made had to guarantee freights, but the freights were charged back out of the gross proceeds.''

Without protracting this opinion by detailing the evidence, it will suffice to say that, according to the plaintiffs' own testimony, it clearly appears, not only that they were engaged in a joint enterprise with the defendant, under which the consignment was made, but that, in the shipment, the defendant was distinctly informed the quantity of each shipper's interest, the particular crates belonging to each, and that, according to the course of business, the plaintiffs, the defendant, and the individuals owning the tomatoes understood that the goods were consigned as the property of such individuals, were to be sold as such, and the proceeds of sales of each man's tomatoes remitted directly to him. The contract is not to be found in the mere act of consigning the car, but from all the facts and circumstances known to the parties. From a consideration of all the facts, we find nothing supporting the plaintiffs' contention that the contract was made either in their name, as principals, or as representatives of undisclosed principals.

*The judgment is reversed and cause remanded.*